Affirmed in part, Reversed and Remanded in part, and Opinion filed July
17, 2003









Affirmed in part, Reversed and Remanded in part, and
Opinion filed July 17, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00908-CV

____________

 

MOHAMMAD
LIDAWI AND ZEINA MOHAMAD, Appellants

 

V.

 

PROGRESSIVE
COUNTY MUTUAL INSURANCE COMPANY, Appellee

 



 

On Appeal from the
County Civil Court at Law No. 2

Harris County, Texas

Trial Court Cause
No. 751,437

 



 

O P I N I O N








In this case arising from
denial of an insurance claim based on the insured’s non-cooperation, we address
an issue of first impression: whether clauses in an insurance contract
requiring the insured to cooperate in the investigation of a claim and to
submit to an examination under oath (EUO) permit the insurance company to
require separate, segregated examinations of the insureds.  We conclude that when, under the terms of an
insurance policy a person may be required to submit to an EUO, it is reasonable
to infer that the insurer may require such examination to be separate and segregated
from the examination of any other person. 
Accordingly, we affirm that part of the trial court’s judgment declaring
that the Standard Texas Personal Auto Policy at issue in this case permits
Progressive to require separate, segregated examinations under oath from Lidawi
and Mohamad.  Nevertheless, because this
is a matter of first impression in Texas, in the interest of justice we reverse
that part of the trial court’s judgment dismissing appellants’ lawsuit for
failure to comply with a condition precedent. 
We remand for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL
BACKGROUND

Appellants Mohammad
Lidawi and Zeina Mohamad, who are husband and wife, represent they are victims
of an accident in which someone failed to stop at a stop sign, striking the
left side of appellants’ automobile as appellants passed through the
intersection.  According to appellants,
the driver then drove away without providing any identifying information.  Appellants filed a claim with their insurer,
Progressive County Mutual Insurance Company, the appellee.  Appellants’ policy provides in part: “A
person seeking any coverage must . . . [c]ooperate
with us in the investigation . . . of any claim.”  The policy also provides, “A person seeking
any coverage must . . . [w]hen required by us . . . submit to examination under
oath.”

On or after February 9,
2001, Progressive Claims Inspector David Tews took a recorded statement from
Lidawi regarding the accident. 
Progressive also inspected appellants=
automobile.  This inspection revealed
damage from multiple impacts involving several incidents.  Additionally, the impacts left paint transfer
marks that did not match Lidawi=s
description of the vehicle causing the accident.  Based on the discrepancies between the
physical damage and Lidawi’s statement, Tews hired an
engineer to investigate the damage.  The
engineer also concluded the damage was not consistent with Lidawi=s statement.








On March 14, 2001, Tews sent
letters to appellants and their attorney, Michael Engelhart, requesting
appellants submit to an EUO.  The letter
did not refer to separate examinations. 
On April 11, 2001, Engelhart, appellants, and an interpreter met Tews
and another Progressive representative at Engelhart=s office.  When Progressive  insisted the EUOs be conducted separately,
Engelhart insisted each appellant be permitted to be in the room when the other
was examined because “they are husband and wife, and are both claimants and
insured under the policy.”  Progressive
refused, and Tews left without taking the examination.

On April 16, 2001, Tews
sent Engelhart a letter formally requesting that appellants submit to
individual and separate EUOs.  Engelhart
responded, indicating there was nothing in the insurance policy that required
individual and separate examinations.  Engelhart
reiterated appellants’ willingness to be examined so long as they could be in
the same room while being questioned.  On
April 25, Tews wrote Engelhart and appellants stating  Progressive was denying appellants= claim because of
appellants=
non-cooperation in the request for the EUO.

Appellants then sued
Progressive for breach of contract and also sought a declaratory judgment
regarding their rights and duties under the policy, specifically the duty of
cooperation, the requirement of separate examinations, and the insurer=s waiver of
examination.  Progressive counterclaimed
for a declaratory judgment (1) that its request for separate examinations was
consistent with the cooperation obligations of the contract, appellant=s failure to cooperate
constituted a breach of the policy, and Progressive therefore properly denied
the claim; and (2) by failing to cooperate and refusing separate examinations,
appellants failed to meet all conditions precedent to recovery on their suit.

Both parties moved for
summary judgment.  Appellants moved for
traditional summary judgment on their claims and a partial no-evidence summary
judgment on Progressive=s
request for declaratory judgment that appellants failed to satisfy a condition
precedent to the lawsuit.  Progressive
moved for traditional summary judgment. 
The trial court rendered judgment, ordering:

1.         The Standard Texas Personal Auto Policy
permits Progressive to require separate examinations under oath from Lidawi and
Mohamad;








2.         Since Lidawi and Mohamad failed to
comply with Progressive=s proper request for separate
examinations, they have failed to comply with a condition precedent to recovery
under their insurance policy with Progressive;

3.         As a result, summary and declaratory
judgment is hereby entered in favor of Progressive;

4.         Plaintiffs’ suit is hereby dismissed;
and

5.         Costs and attorney=s fees are taxed
against the incurring party.

 

DISCUSSION

Introduction and Standard
of Review

Appellants raise two
points of error.  In point of error one,
they contend they are entitled to summary judgment on their affirmative claims
for breach of contract and declaratory judgment because, as a matter of law,
the insurance policy does not entitle Progressive to separate, segregated
EUOs.  In point of error two, they
contend they are entitled to summary judgment on their affirmative claim that
Progressive waived its right to EUOs because they appeared, were ready, willing
and able to proceed with the examination, and Progressive refused to
proceed.  For the same reasons, they
argue they are “entitled to summary judgment and a no-evidence summary judgment”
on Progressive’s “defense” that all conditions precedent have not been met.[1]








When, as in this case, the parties file competing motions for
summary judgment, and the trial court grants one motion and denies the other,
this court may consider the propriety of the denial as well as the grant.  Gramercy Ins. Co. v. MRD Invs., Inc., 47 S.W.3d 721, 724 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied) (citing Comm=rs Court v. Agan, 940 S.W.2d 77, 81 (Tex.1997)).  If the issue raised is based on undisputed
and unambiguous facts, we may determine the question presented as a matter of
law.  Id. at 724.  We may then either affirm the judgment or
reverse and render the judgment the trial court should have rendered, including
one that denies both motions.  Id.
(citing Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988)).  If, however, resolution of the issues rests
on disputed facts, summary judgment is inappropriate, and we should reverse and
remand for further proceedings.  Id.
at 724 (citing Coker v. Coker, 650 S.W.2d 391, 394B95 (Tex.1983)).  We may also remand when the interests of
justice so require.  See Tex. R. App. P. 43.3(b); N. County Mut.
Ins. Co. v. Davalos, 84 S.W.3d 314, 317 (Tex. App.CCorpus Christi 2002, pet. granted).

The movant for summary judgment has the burden to show there
is no genuine issue of material fact and it is entitled to judgment as a matter
of law.  Nixon v. Mr. Prop.  Mgmt. Co., 690 S.W.2d 546, 548 (Tex.
1985).  When deciding whether there is a
disputed material fact issue precluding summary judgment, the appellate court
must take as true all evidence favorable to the non‑movant. Id. at
548B49. 
The reviewing court must indulge every reasonable inference in favor of
the non‑movant and resolve any doubts in its favor.  Id. at 549.

A defendant moving for traditional summary judgment assumes
the burden of showing as a matter of law the plaintiff has no cause of action
against him.  Levesque v. Wilkens, 57 S.W.3d 499, 503 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  Traditional summary judgment for
a defendant is proper only when the defendant negates at least one element of
each of the plaintiff’s theories of recovery, or pleads and conclusively
establishes each element of an affirmative defense.  Science Spectrum, Inc. v. Martinez,
941 S.W.2d 910, 911 (Tex. 1997).








Additionally, after sufficient time for discovery has passed,
a party may file a “no evidence” motion for summary judgment if there is no
evidence of one or more essential elements of a claim or defense on which an
adverse party would have the burden of proof at trial.  See Tex.
R. Civ. P. 166a(i).  As with the
traditional summary judgment, in reviewing a “no evidence” summary judgment, we
review the evidence in the light most favorable to the nonmovant and disregard
all evidence and inferences to the contrary. Coastal Conduit & Ditching,
Inc. v. Noram Energy Corp., 29 S.W.3d 282, 284
(Tex. App.CHouston [14th Dist.] 2000, no pet.).
We sustain a no evidence summary judgment if (1) there is a complete absence of
proof of a vital fact; (2) rules of law or evidence bar the court from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a scintilla; or (4) the evidence
conclusively establishes the opposite of a vital fact.  Id. 

We review declaratory
judgments under the same standards as other judgments and decrees.  See Tex.
Civ. Prac. & Rem. Code Ann. '
37.010 (Vernon 1997); City of Galveston v. Giles, 902 S.W.2d 167, 170
(Tex. App.CHouston
[1st Dist.] 1995, no writ.).  We look to
the procedure used to resolve the issue at trial to determine the standard of
review on appeal.  Giles, 902
S.W.2d at 170.  Here, because the trial court
resolved the case on competing motions for summary judgment in the face of
undisputed facts,  we review the
propriety of the trial court’s denial of the declaratory judgment under the
same standards we apply to the summary judgment.  See Unauthorized Practice of Law Comm. v.
Jansen, 816 S.W.2d 813, 814 (Tex. App.CHouston
[14th Dist.] 1991, writ denied) (case submitted on agreed stipulation of facts
and motion for summary judgment).








Analysis of Points of
Error

Point
of error one: Are appellants entitled to summary judgment on their affirmative
claims for breach of contract and declaratory judgment because the insurance
policy does not entitle Progressive to separate, segregated EUOs?

 

In point of error one,
appellants argue the insurance policy does not entitle Progressive to conduct
separate, segregated EUOs of the insureds. 
Insurance policies are controlled by rules of interpretation applicable
to contracts generally.  Nat=l Union Fire Ins. Co. v.
CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995).  In construing the written contract, our
primary concern is to ascertain the true intent of the parties as expressed in
the contract.  Id.  When the written contract is so worded it may
be given a definite or certain legal meaning, the contract is not ambiguous and
parole evidence  cannot be admitted to
create an ambiguity.  Id.  

If, however, the language
of a policy is subject to two or more reasonable interpretations, the language
is ambiguous.  Id.  “Whether a contract is ambiguous is a
question of law for the court to decide by looking at the contract.”  Id. 
A court may consider the parties’ interpretations only when the court
first determines the policy is ambiguous. 
Id.  Only if a court
decides a policy is ambiguous may the court construe its language in favor of
providing coverage for the insured.  See
State Farm Life Ins. Co. v. Beaston, 907 S.W.2d
430, 433 (Tex. 1995).

Ambiguity in contract
language, however, is not to be confused with silence.  Ambiguity results when the intention of the
parties is expressed in language susceptible of more than one meaning.  Med. Towers, Ltd. v. St. Luke=s Episcopal Hosp.,
750 S.W.2d 820, 822 (Tex. App.CHouston
[14th Dist.] 1988, writ denied).  In
contrast, when a contract is silent, the question is not one of interpreting
the language but rather one of determining its effect.  Id.








Neither party seriously
argues the policy is ambiguous. 
Appellants contend the policy is clear in not requiring separate
examinations.  They contend the policy is
not silent because it contains a clause pertaining to examinations under
oath.  The policy provides:  “A person seeking any coverage
must . . . [c]ooperate with us in the investigation .
. . of any claim.”  The policy also
provides, “A person seeking any coverage must . . . [w]hen
required by us . . . submit to examination under oath.”  Use of the singular strongly suggests any
examination of “a person” may proceed separately from that of any other
person.  Nevertheless, we conclude the
policy is silent regarding the manner in which the EUO is to be conducted.

When a contract is silent
on an issue, Texas courts will infer reasonable terms.  See Med. Towers, 750 S.W.2d at 822B24 (concluding lease agreement silent
as to method of appraisal required; and inferring comparable sales approach the
proper method for determining value of property using accepted rules of
construction).[2]  Texas courts will also supply missing terms
when necessary to effectuate the purposes of the parties under the
agreement.  O’Farrill
v. Gonzalez, 974 S.W.2d 237, 244 (Tex. App.CSan
Antonio, 1998, pet. denied); see also Restatement
(Second) of Contracts '
204 cmt. d (1981).  As a United States
District Court has explained regarding insurance policies:

[T]he court must
tread carefully when ascribing implicit obligations on the contracting
parties.  The court should not venture
beyond construing the contract to effectuate the manifest intentions of the
parties. The court must determine what the parties bargained for when they
agreed to the terms of the cooperation clause.








The
[insureds]  bargained for the right to
make an honest claim under the policy and to receive compensation with a
minimum of inconvenience.  In return,
[the insurer] bargained for a reasonable means to ascertain the truth
surrounding a claim.  The cooperation
clause embodies [the insurer=s] right to
uncover the probability of truth from the [insureds].

The court must
bear these interests in mind when construing the cooperation clause.  Where the precise details of an agreement
have not been defined by the parties, the court should assume the parties
implicitly intended the agreement to operate in a reasonable manner.  For example, courts routinely deem contracts
to require performance within a reasonable time where the parties did not
explicitly set any deadlines.  The
cooperation clause, therefore, should be deemed to allow [the insurer] to take
reasonable steps to ascertain the truth of the claims.

 

State Farm Fire & Cas. Co. v. Tan, 691 F. Supp. 1271, 1273
(S.D. Cal. 1988) (citation omitted); see also Shelter
Ins. Cos. v. Spence, 656 S.W.2d 36, 38 (Tenn. Ct. App.
1983) (viewing as relevant and material the obtaining of true and
accurate information about the type and extent of damage to insured premises
and its contents and observing the parties conceded determination of true facts
is principal purpose of taking sworn statements).

Like the Spence
court, we conclude “more accurate factual statements could likely be taken in
any set of circumstances where multiple parties are involved, if such
statements were taken separately.”  Spence,
656 S.W.2d at 38; see also Tan, 691 F. Supp. at 1273 (stating “[u]ndoubtedly, separate examinations would greatly enhance
[the insurer’s] ability to discover the true facts and to assess the veracity
of the [insureds’] claims”). 
Accordingly, we infer a reasonable term permitting Progressive to
require separate, segregated EOUs of its insureds.[3]








Appellants, however, cite
this court to three cases in which courts from other jurisdictions have
declined to infer such a provision:  United
States Fid. & Guar. Co. v. Welch, 854 F.2d 459 (11th Cir. 1988); Ahmadi v. Allstate Ins. Co., 22 P.3d 576 (Colo. Ct.
App. 2001); and United States Fid. & Guar. Co. v. Hill, 722 S.W.2d
609 (Mo. Ct. App. 1986).  In Welch,
the eleventh circuit considered a situation in which the insurer had obtained
unsworn statements from the insureds, advised them it would later conduct an
examination under oath, then insisted on examining each insured out of the
presence of the other.  Welch, 854
F.2d at 460.  When they refused, the
insurance company brought suit to compel separate examinations.  Id. 
The district court applied the rule that insurance policies should be
construed against the insurer and held the insurer was not entitled to separate
examinations.  Id. at 460B61.  The eleventh circuit affirmed under a
different rationale, applying Alabama’s “strong public policy,” which “supports
the proposition that insurance companies should not be accorded ex gratia advantages which they did not insert in the
policy when they easily could have done so.” 
Id. at 460.  Given that the
policy also limited the examinations to what the company might “reasonably
demand,” the court stated it felt greater confidence affirming than it would
have felt if the issue had arisen at the first questioning of the
insureds.  Id.  Appellants do 
not identify a Texas public policy similar to Alabama=s, and the issue in the
present case did arise at the first attempted questioning.

Ahmadi
shares many similarities with the present case. 
As in the present case, the insurance policy in question contained both
a cooperation clause and a clause indicating the company “may also require any
person making a claim to submit to questioning under oath and sign the
transcript.”  Ahmadi,
22 P.3d at 577.  After being forced off
the road by an unidentified vehicle, the named insured and two claimants
asserted claims under the policy for personal injury and uninsured motorist
benefits.  Id.  The insurer requested the claimants to submit
to EUOs, but when the claimants appeared with counsel for the examination, the
insurer demanded each claimant be examined separately outside the presence of
the others, and the claimants objected.  Id.
at 577B78.








The insurer refused, the
examinations were  not conducted, and the
insurer denied the claims because the claimants had refused to submit to the
EUOs and had not cooperated in the investigation.  Id. at 578.  The claimants filed suit seeking an award of
benefits under the policy and a declaration (1) the insurer was without legal
justification in requiring separate examinations and (2) denial of their claims
was unreasonable.  Id.  Both parties filed motions for summary
judgment, and the trial court granted the insurer’s motion and dismissed the
action.  Id.  The appellate court reversed, reasoning in
part, “In the absence of any ambiguity, we must give effect to
the plain meaning of the policy terms. 
Further, we are not at liberty to rewrite the policy.”  Id. (citations omitted).

The rationale behind the
claimants’ objection to segregated EUOs, however, differed from that in the
present case, in which counsel simply stated the claimants were husband and
wife.  In contrast, the claimants’
counsel in Ahmadi stated he did not speak the
claimants=
native language and therefore needed their assistance even though the insurer
had arranged for an interpreter.  Id.  Moreover, the Ahmadi
court made no reference to a court’s ability to 
infer reasonable terms when the policy is silent regarding a particular
matter.

Finally, in Hill,
a divided court of appeals observed the insurer was not asking the court to
construe any provision, but was asking the court to write additional terms into
the policy.  Hill, 722 S.W.2d at
611.  The authoring judge declined to do
so, stating, “It is beyond argument that if the language of an insurance policy
is clear and unambiguous then a court does not have the power to rewrite the
policy, but must construe it as written.” 
Id.  A second judge
concurred without opinion; the third dissented. 
Id.  Like the Ahmadi court, the authoring judge in Hill
made no reference to a court=s
ability to  infer reasonable terms when
the policy is silent regarding a particular matter.[4]








We conclude the better
rationale is to be found in Spence and Tan.  In the face of silence regarding the manner
in which an insurer is to conduct an EUO, we infer a reasonable term allowing
the insurer to require separate, segregated examinations.

We overrule appellant=s point of error
one.  We affirm that part of the trial
court=s judgment declaring, “The
Standard Texas Personal Auto Policy permits Progressive to require separate
examinations under oath from Lidawi and Mohamad.”

Point
of error two: (i) Are appellants entitled to summary judgment on their
affirmative claim that Progressive waived its right to EUOs because they
appeared, were ready, willing and able to proceed with the examination, and
Progressive refused to proceed; and (ii) Are appellants entitled to summary
judgment and a no-evidence summary judgment on Progressive=s defense that all
conditions precedent have not been met?

 

In point of error
two, appellants argue (1) Progressive waived its right to take any
EUOs, and (2) the condition precedent of their submitting to an EUO has been
met because they appeared ready, willing, and able to submit to an EUO, thereby
substantially complying with the policy provisions regarding proof of
loss.   Appellants implicitly concede
submission to an EUO was a condition precedent to recovery under the
policy.  Performance of any condition
precedent is an essential element of a plaintiff’s breach of contract case.  See Grimm v. Grimm, 864 S.W.2d 160,
161 (Tex. App.CHouston [14th Dist.] 1993, no writ).[5]

Appellants’ point of
error two rests in part on their belief they “have fully complied with the
proof of loss requirements.”  As we held
under point of error one, Progressive can require separate, segregated
EUOs.  Appellants presented no evidence
they complied with this requirement.








Nevertheless, appellants
also contend, “Even without deciding the contract interpretation issue,
Appellants’ conduct in appearing for their examination under oath and in being
ready willing and able to go forward is dispositive in this case.”  In short, they contend they have “substantially
complied” with the policy provisions regarding proof of loss.

Even without meeting all
of the conditions of an EUO, an insured may substantially comply with the
requirement, and the insurer may waive further compliance.  See Century Ins. Co. v. Hogan, 135
S.W.2d 224, 228 (Tex. Civ. App.CAustin
1939, no writ).  Appellants rely on Hogan
to support their claims of waiver and substantial compliance.  In Hogan, the insured had submitted to
an EUO and had answered every question.  Id.
The insured=s
only noncompliance was his refusal to sign the notary’s transcription, a
refusal the appellate court found warranted because the notary had not recorded
all the insured had testified to.  Id.  The appellate court also observed the
unsigned transcription served every purpose it could have served if it had been
signed.  Id.  Finally, in relation to the insurer’s waiver
of the signature, the appellate court observed, 
“The evidence obtained by [the insurer] on this examination was
manifestly all it desired from [the insured], otherwise it would have directed
attention to [the insured’s] failure to sign the transcription in the reply of
January 5, 1938, to the offer of December 16, 1937, by appellee=s attorneys.”  Id.

In the present case,
however, the insureds have not been examined under oath at all.  Appellants point to no document in the
present case equivalent to the notary=s
transcription in Hogan. 
Furthermore, Progressive made a formal request for such an examination
even after appellants refused.  In short,
they “directed attention” to their need for the EUO.  To conclude Progressive waived any
EUO by insisting on a procedure to which we have held it was entitled would
mean Progressive would have had no means of protecting what it correctly
believed were its rights under the policy.








We overrule appellants’
point of error two to the extent appellants argue they are entitled to summary
judgment on their affirmative claim Progressive waived its right to any
examinations under oath.

Nevertheless, we also
decline to conclude Progressive is presently entitled to summary judgment in
its favor and dismissal of appellants’ lawsuit.[6]  Depending on how the policy is written, an insurer’s proper
remedy to enforce a condition precedent is abatement rather than barring the
claim.  See State Farm Gen. Ins. Co.
v. Lawlis, 773 S.W.2d 948, 949 (Tex. App.CBeaumont 1989, no writ) (per curiam)
(citing Humphrey v. Nat’l Fire Ins. Co., 231 S.W. 750 (Tex. 1921)).  Furthermore, like Progressive, appellants had
no means, other than insisting on their position, of protecting what they
believed, based on case law from outside Texas, to be their rights under the
policy.  The summary judgment proof does
not contain any parts of the policy dealing with the ramifications of
non-compliance with the cooperation and examination clauses, particularly under
circumstances such as those presented here. 
Accordingly, we reverse that part of the judgment granting final summary
judgment in favor of Progressive and dismissing appellants= lawsuit for the reason
they failed to comply with a condition precedent.

In addition, because we
are today deciding an issue of first impression, the case has not been fully
developed consistent with that law.  See
Bayway Servs., Inc. v. Ameri-Build
Constr., L.C., 106 S.W.3d 156, 161 (Tex. App.CHouston
[1st Dist.] no pet.) (stating, “As long as there is a probability that a case
has for any reason not been fully developed, an appellate court has the
discretion to remand rather than render a decision”).  Accordingly, we remand to the trial court to
afford appellants the opportunity of complying with the requirement of
separate, segregated EUOs as a condition precedent to their lawsuit.  See Tex.
R. App. P. 43.3(b).








CONCLUSION

We affirm that part of
the trial court=s
judgment declaring, “The Standard Texas Personal Auto Policy permits
Progressive to require separate examinations under oath from Lidawi and
Mohamad.”  We reverse that part of the
judgment granting final summary judgment in favor of Progressive and dismissing
appellants=
lawsuit.  Finally, we remand this cause
to the trial court to afford appellants the opportunity to comply with the
requirement of separate, segregated EUOs as a condition precedent to their
lawsuit.

 

 

_________________________________

John
S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed July 17, 2003.

Panel consists of Justices Anderson, Seymore, and Guzman.











[1]  Failure to
meet conditions precedent is not an “affirmative defense” on which Progressive
bore the burden of proof.  As the Dallas
court explained regarding the burdens of pleading and proof:

 

A condition precedent to the right to maintain an
action must be performed and “the fact of performance or excuse of
nonperformance must be alleged and proved in order to warrant a recovery.”  Southwestern Associated Telephone Co. v.
City of Dalhart, 254 S.W.2d 819, 825 (Tex. Civ. App.CAmarillo 1952, writ ref=d
n.r.e.).  When a plaintiff avers
generally that all conditions precedent have been performed, he is required to
prove the performance of only those conditions precedent specifically denied by
the defendant.  The effect of this rule
is to shift the burden of pleading to the defendant, but not the burden
of proof, when the plaintiff has made a general allegation that all conditions
precedent have been performed.

 

Trevino v. Allstate Ins. Co., 651 S.W.2d 8, 11 (Tex. App.CDallas 1983, writ ref’d n.r.e.) (emphasis added).  Accordingly, appellants’ “no evidence” motion
for summary judgment was not appropriate in this regard.





[2]  See also
Thompson v. CPN Partners, L.P., 23 S.W.3d 64, 72 (Tex. App.CAustin 2000, no pet.) (concluding security contract
silent on issue of which areas of shopping center to be patrolled; and
interpreting security
contract as arranging for guards to patrol common areas of center, not inside
leased premises); Embrey
v. Royal Indem. Co., 986 S.W.2d 729, 733 (Tex.
App.CDallas 1999) (concluding insurance policy
supplementary payments provision silent on payment of prejudgment interest; and
inferring provision did not require insurance company to pay such interest in
excess of policy limits), aff’d, 22 S.W.3d 414
(Tex. 2000);  Maxwell v. Lake, 674
S.W.2d 795, 802B03 (Tex. App.CDallas
1984, no writ) (concluding contract silent on method of exercising option; and
therefore inferring option could be exercised by giving notice within option
period and tendering performance within a reasonable time thereafter); Price
v. Horace Mann Life Ins. Co., 590 S.W.2d 644, 646 (Tex. Civ. App.CAmarillo 1979, no writ) (concluding contract silent
regarding time within which insurer might require application for
reinstatement; and inferring parties intended a reasonable time).





[3]  Regarding
trial testimony, the Texas Supreme Court has observed, “Sequestration minimizes
witnesses= tailoring their testimony in response to that of
other witnesses and prevents collusion among witnesses testifying for the same
side.  The expediency of sequestration as
a mechanism for preventing and detecting fabrication has been recognized for
centuries.”  Drilex
Sys., Inc. v. Flores, 1 S.W.3d 112, 116 (Tex. 1999) (citations
omitted).  In Texas, sequestration in
civil litigation is governed by Texas Rule of Evidence  614 and 
Texas Rule of Civil Procedure 267. 
Id.  Although parties who
are natural persons and their spouses are specifically exempted from the
sequestration rules, appellant has provided no principled reason why a spousal
exemption should extend to the realm of investigation, and we discern none.





[4]  The authoring
judge opined:

 

The only way this court could reach the result
requested by [the insurer] would be to rewrite the policy and to add provisions
which are not now there nor which are contended to be contained by a
reasonable construction of the language employed.   [The insurer] 
would have this court undertake a complete rewriting of the provisions
providing for the examination under oath.  
That is beyond the power of the courts in this state.

 

United
States Fid. & Guar. Co. v. Hill, 722 S.W.2d
609, 611 (Mo. Ct. App. 1986) (emphasis added). 





[5]  Insurance
policy provisions requiring the insured’s submission to an EUO as a condition
precedent to sustaining a suit on the policy are valid.  State Farm Gen. Ins. Co. v. Lawlis, 773 S.W.2d 948, 949 (Tex. App.CBeaumont 1989, no writ) (per curiam) (citing Phila. Underwriters= Agency v. Driggers, 111 Tex. 392, 238 S.W. 633 (1922)).





[6]  In the caption
for their point of error one, appellants argue the trial court should not have
granted summary judgment in favor of Progressive.